IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AKEEM HARRIS, | § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:23-cv-813-B-BN |
| CITY OF GRAND PRAIRIE and GRAND PRAIRIE POLICE DEPARTMENT, | § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Akeem Harris filed a *pro se* complaint alleging that the City of Grand Prairie and its police department violated the Constitution and federal law when he was detained under Chapter 573 of the Texas Health and Safety Code on February 21, 2023. *See* Dkt. Nos. 3, 8. United States District Judge Jane J. Boyle referred Harris's lawsuit to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference. The Court granted Harris's motion for leave to proceed *in forma pauperis* (IFP). *See* Dkt. Nos. 4, 6. And the undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should dismiss the complaint for Harris's failure to allege a claim on which relief may be granted.

**Applicable Background**

Harris alleges that at 2:00 p.m. on February 21, 2023, he called 911 "to request that the fire department respond to a vehicle fire that was going on." Dkt. No. 3 at 1. Grand Prairie police officers responded and asked Harris to provide identification.

An officer then questioned Harris "about 'what's in the bag,' referring to [his] backpack," to which Harris "responded 'none of your business.'" *Id.* at 1-2.

> The officer then brings up the make/model and serial number of a firearm owned by me and I respond, "that's good to know you know that but that information is irrelevant at this point." I explain to the officers that I suspect possible foul play in the fire because of leaving my vehicle unattended for some time the day before. I also explained that I have reported ongoing stalking here in Texas and other states. Officer New elaborated on my comment and started to talk about "gang stalking" and how he did research on it and it could be that. I acknowledged to Officer New that I am aware of "gang stalking" and also did research on the organized stalking phenomena. I let officer New know that I've been trying to make efforts to objectively make reports on the stalking activity I experienced for record purposes.

*Id.* at 2.

Harris next alleges that he "requested to go to the hospital for a hand burn," "but when [he] was being loaded into the EMT vehicle, the EMTs wanted to check [his] bag." *Id.* Harris declined and "was told that they cannot drive [him] to the hospital." *Id.* He responded that he would drive himself. *See id.* At that point, he "was abruptly grabbed and handcuffed by Officer New," who told Harris that he would transport him to the hospital. *Id.*

> Harris also alleges that he recalled a conversation with one of the officers
> 
> about me refusing him to check my bag. Officer B. Emery said to me hypothetically, "what are you gonna do? I just wanna make sure no one takes your firearm off you out here." I responded, "that would not happen, they'd be risking dying in the streets going for my firearm while it's on me." Officer B. Emery then asked, "what would you do if you came out here and someone was entering your car?" I responded "they'd catch a beating."

*Id.*

Based on his interaction with the officers that day, Harris alleges that believes

"that the officers dishonestly gained access to my firearm to separate me from it without any mention, sight, or knowledge of the firearm being in my bag" and that "[t]hey abused their authority as law enforcement officers and intentionally made inaccurate assessments to satisfy emergency detention" because "[t]hey could not have made this judgment to satisfy this requirement without the knowledge of any danger being present or anyone else around when they made the judgment. I only wanted help from the local fire department to put out the fire. Additionally I felt discriminated against because I was being judged to have a disability." *Id.* at 2-3.

Based on these allegations, Harris asserts violations of the Second, Fourth, and Fifth Amendments, the Americans with Disabilities Act (the ADA), and (possibly) 18 U.S.C. § 242.

## Legal Standards

A district court is required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). "The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, but a plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)).

In fact, "the court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

To survive dismissal, plaintiffs must instead "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Put differently, a plaintiff, through the complaint, must provide the Court enough factual content to demonstrate an entitlement to relief. *Compare Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."), *with Robbins*, 519 F.3d at 1247 ("The burden is on the

plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556)).

## Analysis

Harris names as defendants only the City of Grand Prairie and its police department. Without considering the claims specified in the complaint, Harris has not alleged a plausible cause of action against either defendant. But, insofar as Harris may attempt to amend his complaint, the undersigned also explains why the facts Harris pleads do not allege plausible causes of action considering each claims set out in the complaint.

### I. Harris fails to allege a plausible cause of action against the named defendants.

As to the Grand Prairie Police Department, a plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991) ("[U]nless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself.").

Police departments of Texas municipalities named as defendants are commonly dismissed as non-jural entities. *See, e.g.*, *Combs v. City of Dall.*, 289 F. App'x 684, 686 (5th Cir. 2008) (per curiam) (affirming dismissal of "the DPD as a defendant because it is a servient political department that does not enjoy a separate and distinct legal existence from the City of Dallas," as the plaintiff failed to "show that the City of Dallas granted the DPD the capacity to sue or be sued as a separate

and distinct entity" (citing *Darby*, 939 F.2d at 313)).

The Court should therefore dismiss the claims against the City of Grand Police Department.

Generally, where a plaintiff names a non-jural entity as a defendant, the Court should allow the plaintiff leave to amend his complaint to cure this deficiency. *See Johnson v. Dall. Police Dep't*, No. 3:13-cv-4537-D, 2014 WL 309195, at \*2 n.2 (N.D. Tex. Jan. 28, 2014) ("*Pro se* plaintiffs who name a non jural entity as a defendant should be alerted and given an opportunity to amend before dismissal of the action." (citing *Parker v. Fort Worth Police Dep't*, 980 F.2d 1023, 1026 (5th Cir. 1993))). But that general rule may not apply here for the reasons set out below.

And, to the extent that Harris sues the City of Grand Prairie itself, "[a] person may sue a municipality that violates his or her constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting 42 U.S.C. § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

> A plaintiff may proceed on a *Monell* claim only by
>
> identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482; *see also Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a

court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting, in turn, *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam) (en banc))).

But, almost without exception, allegations "limited to the events surrounding the plaintiffs" cannot constitute "an allegation of a *de facto* policy." *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *see, e.g., id.* at 628 ("Here, the plaintiffs allege there was a retaliatory campaign against them and a retaliatory investigation against the grand jury and its prosecutors, all arising from the same predicate events. The retaliatory campaign against them was publicly known, but they offered no evidence that similar retaliation had victimized others. There was, in other words, no allegation of a 'widespread practice' of retaliation that is 'so common and well settled' as to constitute the policy of Harris County." (quoting *Webster*, 735 F.2d at 853)).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (quoting *Webster*, 735

F.2d at 841). And "a plaintiff must allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (quoting *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010)).

Regardless the theory of municipal liability, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

Because Harris offers no allegations to support liability against the City of Grand Prairie, the Court should dismiss the claims against the City.

## II.     Harris fails to allege plausible constitutional claims.

"The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures." *Peterson*, 588 F.3d at 844.

"A seizure occurs when an officer 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Smith v. City of Dall. Police Dep't*, No. 3:18-cv-1217-N-BH, 2020 WL 4341129, at *3 (N.D. Tex. May 20, 2020) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968)), *rec. accepted*, 2020 WL 4339164 (N.D. Tex. July 27, 2020).

And the United States Court of Appeals for the Fifth Circuit "has held implicitly that a person taken into custody by police officers under Texas Health and Safety Code § 573.001 is seized under the Fourth Amendment." *Pena v. Givens*, 637 F. App'x 775, 780 (5th Cir. 2015) (per curiam) (citing *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012)).

But "[t]he Fourth Amendment permits a seizure if supported by probable cause." *Smith*, 2020 WL 4341129, at *3 (citation omitted); *see also Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment also require a showing of no probable cause.").

> The Fifth Circuit has held that in the context of [Texas's] emergency detention statute, "probable cause exists where the facts and circumstances within the officer's knowledge at the time of the seizure are sufficient for a reasonable person to conclude that an individual is mentally ill and poses a substantial risk of serious harm." *Cantrell*, 666 F.3d at 923. The Fifth Circuit has also noted that the existence of Tex. Health & Safety Code § 573.001(a) provides further support for a finding that police officers act with probable cause when they arrest an individual for temporary detention in a mental health facility. *See Martinez v. Smith*, No. 99-40285, 1999 WL 1095667, at *3 (5th Cir. Nov. 4, 1999) (holding that officers had probable cause to take plaintiff into custody and noting that "[§ 573.001] buttresses the officers' argument that they acted within their clear authority"). Thus, at the motion to dismiss stage, the question is whether [a plaintiff] has alleged sufficient facts in [the operative complaint] that would, if true, establish that [the arresting officer] lacked the requisite probable cause needed to order [the plaintiff's] temporary detention under Tex. Health & Safety Code § 573.001(a) and the Fourth Amendment.

*Gordon v. Neugebauer*, No. 1:14-cv-93-J, 2014 WL 6892716, at *7 (N.D. Tex. Oct. 31, 2014) (citation modified).

Texas law also provides that, in addition to believing that an individual is

mentally ill and poses a substantial risk of serious harm (to the person or to others), to permit warrantless apprehension under Chapter 573, the officer must "believe[] that there is not sufficient time to obtain a warrant before taking the person into custody." *Clark v. Thompson*, 850 F. App'x 203, 210 (5th Cir. 2021) (per curiam) (cleaned up; quoting TEX. HEALTH & SAFETY CODE § 573.001(a)). And the risk supporting detention under the statute

> may be demonstrated by (1) "the person's behavior" or (2) "evidence of severe emotional distress and deterioration in the person's mental condition to the extent that the person cannot remain at liberty." TEX. HEALTH & SAFETY CODE § 573.001(b). Finally, an officer "may form the belief that the person meets the criteria for apprehension: (1) from a representation of a credible person; or (2) on the basis of the conduct of the apprehended person or the circumstances under which the apprehended person is found." TEX. HEALTH & SAFETY CODE § 573.001(c).

*Id.*

Harris alleges that police officers arrived on the scene of a car fire "that was going on," that his hand was burned, and that he refused to allow officers (and then EMTs) to search his backpack, although his allegations further reflect that officers did search the backpack and found a firearm. *See* Dkt. No. 3 at 1-3. Harris also alleges that, through his conversation with an officer, he answered that, should someone attempt to take his firearm, "they'd be risking dying in the streets," and that, should someone enter his car, "they'd catch a beating." *Id.* at 2. And Harris contends that officers "intentionally made inaccurate assessments to satisfy emergency detention." *Id.* at 3; *see also id.* at 5 ("The officer's answer to question 4 on the Notice of Emergency Detention states the Plaintiff says 'im ready' in response to a hypothetical situation of; 'what if someone premeditatively commits a crime against your person

or property?' … The officers fished the Plaintiff for responses that would satisfy Ch573(a) long after they had already made the determination and detained Harris under this code.").

But Harris's allegations "'do not permit the court to infer more than the mere possibility of misconduct,' which is not enough to show that [any officer] acted with 'no probable cause.'" *Clark*, 850 F. App'x at 812 (quoting *Iqbal*, 556 U.S. at 679, then *Brown*, 243 F.3d at 189); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)); *Gordon*, 2014 WL 6892716, at *8 ("Although these facts may show the 'mere possibility of misconduct,' that is not enough to survive a motion to dismiss where 'the complained of conduct was more likely explained by, or even simply compatible with, an alternate, lawful act.'" (citations omitted)).

That is, officers' arriving on the scene of a car fire "that was going on" at least raised reasonable suspicion to first detain Harris and then conduct a protective search. "'[O]fficers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot.'" *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (quoting *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (discussing *Terry v. Ohio*)). And reasonable suspicion allows for a protective search where "the officer may conduct a pat down search 'to determine whether the person is … carrying a weapon.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting

*Terry*, 392 U.S. at 24)).

"'Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *Prado Navarette v. California*, 572 U.S. 393, 397 (2014); citation omitted).

And, based on the remainder of Harris's allegations, this reasonable suspicion could have ripened into probable cause. So Harris has not alleged a plausible Fourth Amendment violation based on his being taken into custody under Chapter 573.

Harris also alleges a violation of the Second Amendment because his firearm was taken from him when he was taken into custody. *See* Dkt. No. 3 at 4. This allegation is better understood as a Fourth Amendment violation. But Harris has not alleged a plausible violation of the Fourth Amendment based on the seizure of the firearm considering the facts in the complaint.

> It is not illegal, [for example], for a police officer to seize an arrestee's weapon if the officer is making a custodial arrest or reasonably believes that officer or public safety requires such a seizure. "So long as the requirements of the Fourth Amendment are met, police officers may ... confiscate guns that they believe have been used to commit a crime. Such a search and seizure is a reasonable, necessary restriction on an individual's Second Amendment right to bear arms."

*Hunter v. City of Electra, Tex.*, No. 7:03-cv-153-R, 2006 WL 1814150, at *7 (N.D. Tex. June 29, 2006) (quoting *Dickerson v. City of Denton*, 298 F. Supp. 2d 537, 540 (E.D. Tex. 2004)); *see also United States v. Wooldridge*, No. 4:15-CR-18, 2016 WL 2892529, at *8 (E.D. Tex. May 17, 2016) ("While the right to bear arms is not absolute, police officers may only confiscate firearms during the search of a premises if, and when,

Fourth Amendment requirements have been met." (citation omitted)).

Harris's final alleged violation of the Constitution is that the City of Grand Prairie, its police department, and (presumably) officers not named as defendants violated the Fifth Amendment. But this claim also fails to be plausible, as "'the Fifth Amendment applies only to the actions of the federal government,' not local state actors." *Ramirez ex rel. Ramirez v. Bexar Cnty., Tex.*, No. SA-10-CV-0296 FB (NN), 2010 WL 2555143, at *3 (W.D. Tex. July 21, 2010) (quoting *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)).

In sum, the Court should dismiss Harris's claims concerning the Constitution.

### III.  Harris fails to allege a plausible claim under the ADA.

"Title II of the ADA prohibits 'disability discrimination in the provision of public services.'" *Crawford v. Pitts*, No. 4:20-cv-1119-O, 2022 WL 479959, at *13 (N.D. Tex. Feb. 16, 2022) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011)).

"Specifically, Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.'" *Id.* (quoting 42 U.S.C. § 12132).

> But
>
> Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life. Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require

> the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents.

*Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000).

Exigent circumstances are alleged to have been present here: the car fire, a gun, and Harris's answers to the officers' questions. *Cf. Wilson v. City of Southlake*, 936 F.3d 326, 331 (5th Cir. 2019) ("Here, we have an eight-year-old child with disabilities known to the officer and in possession of a child's jump rope provided by the school. There was no potentially life-threatening situation or threat to human life. As the district court stated, this was merely a 'disruption.' Because there was no exigent circumstance, the *Hainze* exception does not apply.").

The Court should therefore dismiss the ADA claim.

**IV.  Harris fails to allege plausible claim under a federal criminal statute.**

Although not an enumerated claim in the complaint, Harris alleges that he "is commencing this civil action to recover monetary damages and injunctive relief from the Defendant pursuant to Title 18 U.S. Code § 242 – deprivation of rights under color of law." Dkt. No. 3 at 1. But Section 242, a provision of the federal criminal code, does "not afford [Harris] a private right of action." *Tucker v. U.S. Court of Appeals for Tenth Circuit*, 815 F. App'x 292, 294 (10th Cir. 2020); *see also Ennis Transp. Co. Inc. v. Richter*, No. 3:08-cv-2206-B, 2009 WL 464979, at *1 (N.D. Tex. Feb. 24, 2009) ("It is well established that generally there is no private cause of action for the violation of a federal criminal statute, and thus no jurisdiction for federal courts to preside over a suit between private parties when the only federal law allegedly violated is

criminal. In rare circumstances, however, where a criminal statute has 'a statutory basis for inferring' the existence of a civil action, violation of a criminal statute may give rise to a private cause of action." (citations omitted)).

The Court should therefore dismiss any claim under Section 242 or any other federal criminal statute, where Harris failed to allege a private right of action.

For all these reasons, the Court should dismiss the complaint.

### Leave to Amend

The time to file objections to this recommendation (further explained below) allows Harris an opportunity to explain how he would cure the deficiencies identified above and thus show the Court that this case should not be dismissed with prejudice at this time and that the Court should instead grant leave to amend the complaint. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

But, if Harris fails to show that leave to amend should be granted, the Court should dismiss this case with prejudice.

### Recommendation

The Court should dismiss this action with prejudice unless, within the time to file objections, Plaintiff Akeem Harris shows that leave to amend the complaint

should be granted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 25, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE